**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rafael Alvarez PENA, Defendant–
Appellant.**

No. 94–3750.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1995.

Decided Oct. 5, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied Dec. 20, 1995.

---

Sylvia Baiz, argued, San Diego, California, for appellant.

Clifford D. Wendel, argued, Des Moines, Iowa (Don C. Nickerson, United States Attorney, on the brief), for appellee.

Before McMILLIAN, LAY and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

Rafael Alvarez Pena appeals his conviction and 324–month sentence for conspiring to distribute methamphetamine in violation of 21 U.S.C. § 846. Pena argues that the district court[1] committed numerous trial and sentencing errors. We affirm.

## I. Alleged Trial Errors

*A. Insufficiency of the Evidence.* Pena claims that the evidence presented at trial was insufficient to convict him of the conspiracy charge. We review that evidence in the light most favorable to the jury's verdict and reverse only if "no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Frayer,* 9 F.3d 1367, 1371 (8th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 77, 130 L.Ed.2d 31 (1994).

The evidence linked Pena, a California resident, with three methamphetamine shipments to Des Moines, Iowa. The first shipment was in early 1994, when Pena "fronted" approximately three pounds of methamphetamine to Jacinto Aranda Gonzalez ("Aranda"), who was reestablishing a distribution network in Des Moines. In March 1994, Des Moines police investigated Aranda's Des Moines distributor, Margaret Valadez ("Valadez"). She agreed to cooperate and arranged for a second shipment from Aranda. Sergio Martinez and Francisco Lopez–De-Leon transported this shipment from Fresno to Des Moines, where police seized the methamphetamine and arrested the couriers on March 15. Pena had again fronted this shipment, so he received no money because the drugs were never sold.

Aranda arranged to send Valadez a third shipment in April. Pena again bore the financial risk and therefore decided to oversee the shipment. Pena and Aranda packaged the methamphetamine in California, and Pena arranged for Xochitl Resendiz ("Resendiz") and Veronica Ortiz ("Ortiz") to take a bus from Sacramento to Des Moines and deliver a black travel bag to "the aunt" in Des Moines. Pena drove the two couriers to the Sacramento bus station. On April 12, Resendiz and Ortiz arrived in Des Moines and delivered the travel bag to Valadez. The next day, Pena and Aranda flew to Des Moines. On April 14, Aranda was arrested while negotiating a methamphetamine sale to an undercover officer. Later that day, Pena was arrested with Resendiz and Ortiz at their hotel.

Pena concedes there was a conspiracy involving Aranda and others. Once a conspiracy has been established, only slight evidence is needed to link a defendant to the conspiracy. *See United States v. Logan,* 49 F.3d 352, 360 (8th Cir.1995). Aranda testified that Pena supplied the methamphetamine and personally supervised the third shipment. Resendiz testified that Pena arranged her trip to Des Moines. The arresting officers found a piece of paper in Pena's wallet listing substances used to manufacture methamphetamine. There was ample evidence to convict Pena of conspiracy to distribute methamphetamine.

*B. Rule 404(b) Evidence.* Pena argues that the district court erred in admitting Resendiz's testimony that Pena told her of a "kitchen" in the mountains where he manufactured drugs. Pena raised this issue in a pretrial motion in limine. The district court deferred its ruling, and Pena did not renew his objection at trial. Thus, the issue was not preserved for appeal. *See United States v. Mihm,* 13 F.3d 1200, 1204 (8th Cir.1994). As *Mihm* makes clear, (i) there was no plain error because the district court advised defense counsel to object at trial, and (ii) given Pena's "wrong place at the wrong time" defense to the conspiracy charge, it was not plain error to admit evidence of his other recent drug trafficking activity.

*C. A Double Jeopardy Issue.* Pena argues that his sentence violates the Double Jeopardy Clause because the State of

---

1. The HONORABLE HAROLD D. VIETOR, United States District Judge for the Southern District of Iowa.

Iowa forfeited $930 in cash found when he was arrested. This argument was raised for the first time on appeal. Pena was not placed in jeopardy by the state forfeiture proceeding because he never asserted ownership of the seized cash. *Accord United States v. Baird,* 63 F.3d 1213, 1217–20 (3d Cir.1995); *United States v. Arreola–Ramos,* 60 F.3d 188, 192 (5th Cir.1995); *United States v. Torres,* 28 F.3d 1463, 1465–66 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994). Moreover, the State of Iowa forfeited the cash, while this is a federal sentence. Under the dual sovereignty doctrine, federal and state governments may independently prosecute a person for the same conduct. *See, e.g., Heath v. Alabama,* 474 U.S. 82, 89, 106 S.Ct. 433, 438, 88 L.Ed.2d 387 (1985). There is no showing that Iowa's forfeiture proceeding functioned as a "tool" of the federal government. *See United States v. Talley,* 16 F.3d 972, 974–75 (8th Cir.1994).

■ *D. Refusal To Give a Multiple Conspiracies Instruction.* Pena contends that the district court erred in refusing to give his proposed multiple conspiracies instruction. This issue was not properly preserved because Pena did not specifically object to the instructions as given nor explain why failure to include the requested instruction was error. *See* Fed.R.Crim.P. 30; *United States v. Hoelscher,* 914 F.2d 1527, 1534 (8th Cir.1990), *cert. denied,* 498 U.S. 1090, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991), *and* 500 U.S. 943, 111 S.Ct. 2240, 114 L.Ed.2d 482 (1991). Thus, we review the instructions for plain error, that is, "whether the omitted instructions affect the defendant's substantial rights resulting in a miscarriage of justice." *United States v. Gantos,* 817 F.2d 41, 43 (8th Cir.1987), *cert. denied,* 484 U.S. 860, 108 S.Ct. 175, 98 L.Ed.2d 128 (1987).

A defendant is only entitled to a jury instruction on multiple conspiracies if evidence exists to support such a finding. *United States v. Lucht,* 18 F.3d 541, 552 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994). Pena argues that Resendiz's testimony about Pena's methamphetamine "kitchen" was evidence supporting the existence of a second conspiracy. However, Rule 404(b) evidence of prior drug trafficking does not support a finding that the charged conduct involved multiple conspiracies. There was no plain error.

## II. Alleged Sentencing Errors

■ *A. Aggravating Role Enhancement.* Pena argues that the district court erred in assessing a three-level enhancement because Pena "was a manager or supervisor ... and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). The district court found that Pena supervised the entire April shipment, controlling Aranda's participation and recruiting Ortiz and Resendiz to transport the drugs to Des Moines. Further, the court found the conspiracy involved at least five participants: Pena, Aranda, Sergio Martinez, Francisco Lopez–DeLeon, and Valadez, before she became a government informant. We review the factual finding of Pena's role in the offense for clear error. *See* 18 U.S.C. § 3742(e); *United States v. Maxwell,* 25 F.3d 1389, 1399 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 610, 130 L.Ed.2d 519 (1994).

■ Pena argues that he was not a manager or supervisor of the conspiracy because Aranda was the Des Moines ringleader while Pena was a mere seller of drugs in separate transactions to independent parties. Pena cites *United States v. Belletiere,* 971 F.2d 961, 969–70 (3d Cir.1992), a case applying the four-level "organizer or leader" enhancement under U.S.S.G. § 3B1.1(a). The government's evidence clearly proved that Pena overstepped a mere seller's role. Pena retained the financial risk of distribution by fronting or consigning the drugs to Aranda and his Des Moines network. After the March shipment was intercepted, Pena took personal control of the April shipment, arranging transportation and following the drugs to their Des Moines destination. In the words of Aranda, Pena "didn't trust me ... because we had lost the last shipment."

■ The key factors in determining management or supervisory authority are control over other participants and organization of

the criminal activity. *See United States v. Rowley,* 975 F.2d 1357, 1364 (8th Cir.1992); U.S.S.G. § 3B1.1, comment. (nn.1, 2). Pena controlled Aranda, organized the April shipment, and retained the financial risk of distribution. The guidelines only require that Pena supervised "one or more other participants" to trigger this enhancement. *See* U.S.S.G. § 3B1.1, comment. (n.2); *United States v. Adipietro,* 983 F.2d 1468, 1473 (8th Cir.1993). The finding that he was a manager or supervisor is not clear error.

█ Pena also argues that there were not at least five people involved in the conspiracy because Valadez was a government informant. We disagree. Before becoming an informant, Valadez participated in the conspiracy by receiving and distributing the first shipment supplied by Pena through Aranda. She may be counted because of this activity prior to her cooperation with the police. *See United States v. Dyer,* 910 F.2d 530, 533 (8th Cir.1990), *cert. denied,* 498 U.S. 907, 111 S.Ct. 276, 112 L.Ed.2d 232 (1990), *and* 498 U.S. 949 (1990). The district court properly counted Aranda, Pena, and the couriers of the ill-fated February shipment, Sergio Martinez and Francisco Lopez–De-Leon. *See United States v. Harry,* 960 F.2d 51, 53 (8th Cir.1992). Thus, its finding that the conspiracy included five participants was not clear error.

█ If a conspiracy comprises five or more participants, and the defendant played an aggravating role, the sentencing court must impose this three-level enhancement. *See United States v. Kirkeby,* 11 F.3d 777, 778–79 (8th Cir.1993). The district court properly imposed a three-level aggravating role enhancement.

█ *B. Obstruction of Justice Enhancement.* Pena argues that the district court improperly enhanced his sentence for obstruction of justice based upon Pena's perjury at trial. A finding of trial perjury supports an obstruction of justice enhancement. *See* U.S.S.G. § 3C1.1, comment. (n.3(b)). If a defendant objects to a proposed enhancement based on perjury, the trial court

must review the evidence and make independent findings necessary to establish a

willful impediment to or obstruction of justice.... The district court's determination that enhancement is required is sufficient, however, if ... the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury.

*United States v. Dunnigan,* —— U.S. ——, ——, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445 (1993) (citations omitted). The federal crime of perjury requires proof of "false testimony concerning a material matter with the willful intent to provide false testimony...." *Dunnigan,* —— U.S. at ——, 113 S.Ct. at 1116; *see* 18 U.S.C. § 1621(a).

█ At sentencing, the district court identified specific instances in which Pena had falsely denied knowledge of or involvement in drug trafficking, with the intent to cause the jury to find him not guilty. These findings are sufficient under *Dunnigan,* and they are not clearly erroneous. Therefore, the obstruction enhancement must be affirmed. *See United States v. Oakie,* 12 F.3d 1436, 1444 (8th Cir.1993).

The judgment of the district court is affirmed.