# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2453

_____

United States of America,       *
     *
       Appellee,       *
     *     Appeal from the United States
    v.       *     District Court for the
     *     District of North Dakota.
Jason Alan Azure,       *
     *
       Appellant.       *

_____

Submitted: December 9, 2008
Filed: July 8, 2009

_____

Before COLLOTON, BRIGHT, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Jason Alan Azure, a member of the Turtle Mountain Chippewa Tribe, pleaded guilty to assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6) and 1153. The district court[1] sentenced Azure to 46 months' imprisonment, the bottom of the advisory guideline range. Azure appeals, raising a number of sentencing issues. Because we conclude that he knowingly and voluntarily waived his right to appeal on these grounds, we dismiss the appeal.

_____

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

On July 11, 2007, Azure assaulted Roxanne Laducer in Laducer's home. During the altercation, Azure bit Laducer above the right eye, removing a portion of skin and tissue, including part of her eyebrow. Azure also bit Laducer's son, James, who had entered the room after seeing Azure and his mother struggling. At the time of the altercation, Azure was under a tribal court protection order mandating that he have no unauthorized contact with Laducer.

A grand jury returned a two-count indictment against Azure, charging him with assault resulting in serious bodily injury and assault with a dangerous weapon, namely, his teeth. On March 18, 2008, pursuant to a plea agreement, Azure pleaded guilty to assault resulting in serious bodily injury. Paragraph 23 of the plea agreement contained an appeal waiver that preserved only Azure's "right to appeal any sentence imposed which is greater than the upper limit of the regularly determined advisory guideline range." The district court discussed the appeal waiver during the change of plea hearing, emphasizing that if Azure was sentenced "within the sentencing guidelines" that were found to apply to him, then he was "giving up" his right to appeal the sentence.

The presentence report recommended an advisory guideline range of 46 to 57 months' imprisonment, corresponding to a total offense level of 22 and a criminal history category of II. The total offense level was derived from a base offense level of 14, USSG § 2A2.2, a five-level increase for causing serious bodily injury, *id*. § 2A2.2(b)(3)(b), a four-level increase for using a dangerous weapon, *id*. § 2A2.2(b)(2), a two-level increase for violating a tribal court protection order, *id*. § 2A2.2(b)(5), and a three-level decrease for acceptance of responsibility. *Id*. § 3E1.1(b). Azure objected to the four-level increase, arguing that teeth do not constitute a dangerous weapon.

At the sentencing hearing on June 18, 2008, the district court adopted the guideline computations recommended in the presentence report. Azure urged the

court to impose a sentence below the recommended range, and he also sought credit for 90 days that he spent in tribal jail on charges associated with the altercation. The court declined to grant the requested credit, finding that it was unclear whether Azure had served a specific amount of time in tribal jail that was directly related to the same offense for which he was prosecuted in federal court. The court also determined that a term of 46 months' imprisonment was appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).

On appeal, Azure contends that the court committed procedural error by failing to consider Laducer's contributing role in the altercation and by failing to explain adequately its consideration of the sentencing factors enumerated in § 3553(a). He also argues that the sentence is substantively unreasonable, because he should have received credit for the 90 days he spent in tribal jail. The government counters that Azure's appeal should be dismissed based on the waiver of appellate rights contained in the plea agreement. Alternatively, the government argues that the sentence should be affirmed on the merits.

A defendant may waive his right to appeal. We will generally enforce such a waiver as long as the appeal falls within the scope of the waiver, and the defendant's accession to the plea agreement and the waiver was knowing and voluntary. *United States v. McIntosh*, 492 F.3d 956, 959 (8th Cir. 2007). Our court recognizes a narrow exception to the enforcement of waivers when enforcement would result in "a miscarriage of justice." *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003) (en banc). The government bears the burden of establishing that the plea agreement clearly and unambiguously waives the defendant's right to appeal, and ambiguities in the agreement are construed against the government. *Id.* We review *de novo* whether a defendant waived the right to appeal a sentence. *United States v. Michelsen*, 141 F.3d 867, 871 (8th Cir. 1998).

The waiver in Azure's plea agreement states, in relevant part:

> Defendant also waives any right to appeal the sentence under Title 18, United States Code, § 3742(a), as recognized and permitted by United States v. Andis, 332 [sic] F.3d 886 (8th Cir. 2003). *Expressly excluded from the waiver of appeal is Defendant's right to appeal any sentence imposed which is greater than the regularly determined advisory guideline range*.

(Am. Plea Agreement ¶ 23, R. Doc. 20, at 8-9) (emphasis added).

The government observes that the district court determined an advisory guideline range of 46 to 57 months' imprisonment, and sentenced Azure within that range. It argues, therefore, that Azure was sentenced within the "regularly determined advisory guideline range," and that he waived the right to appeal his sentence. Azure counters that the phrase "regularly determined advisory guideline range" in the exclusion from the waiver is ambiguous, because it fails to specify who decides the guideline range and at what point in the sentencing process the range is to be determined. On this basis, Azure contends that the waiver is unenforceable. We conclude that the government has the better argument in this case.

The term "guideline range" is a familiar term of art in the advisory guideline system. The application instructions in the United States Sentencing Commission Guidelines Manual direct the district court to determine an offense level and criminal history category for each defendant, and then to determine the guideline range that corresponds to the offense level and criminal history category. USSG § 1B1.1(g); *see id.* Ch. 5, Pt. A (Sentencing Table). For each pairing of an offense level and criminal history category, the sentencing table in Chapter 5 sets forth a range of imprisonment known as the guideline range. Part K of Chapter 5 then provides that the court "may depart from the applicable guideline range" in certain circumstances. *Id.* § 5K2.0(a)(1). After *United States v. Booker*, 543 U.S. 220 (2005), the court also may

-4-

impose a sentence outside the guideline range based on its application of 18 U.S.C. § 3553(a).

In this case, the district court followed the procedure set forth in the application instructions, calculated a total offense level of 22 and a criminal history category II, and determined a guideline range of 46 to 57 months' imprisonment. The court then sentenced Azure to 46 months' imprisonment. Thus, if the guideline range determined by the court pursuant to USSG § 1B1.1(g) is the "regularly determined guideline range," then Azure has waived his right to appeal the sentence, because his sentence was not "greater than the regularly determined advisory guideline range."

Azure argues that the waiver should not be enforced because the phrase "regularly determined advisory guideline range" is unclear about *who* is to determine the range, and about *when* the range is to be determined. He suggests that the agreement could refer to the advisory guideline range determined by the prosecution or the probation office, rather than by the district court. He says that the agreement could refer to the guideline range determined before the application of any offense level enhancements, or to the range determined after any enhancements but before any departures deemed appropriate by the district court. Azure relies on *United States v. Kemp*, 530 F.3d 719 (8th Cir. 2008), where this court held that the phrase "advisory guideline range established by the Court for the offense" was unclear, because it could refer either to the guideline range determined based on the defendant's offense level and criminal history category without any departures, or to a range calculated by the sentencing court after an upward departure. *Id*. at 723; *see also United States v. Azure*, 536 F.3d 922, 929 (8th Cir. 2008).

We are not convinced that there is any material ambiguity in the written plea agreement that permits Azure to avoid the waiver. The natural reading of the agreement is that the "regularly determined advisory guideline range" is the guideline

range determined by the district court. The prosecution may advocate for a particular guideline range, and the probation office may recommend a guideline range, but the responsibility to *determine* the advisory range rests with the sentencing court. USSG § 1B1.1(g); *see Gall v. United States*, 128 S. Ct. 586, 596 (2007). In any event, any ambiguity in the agreement about which of the three actors is meant to identify the "regularly determined advisory guideline range" is immaterial in this case. The guideline range determined by the court was the same guideline range recommended by the probation office and advocated by the prosecution.

Nor is there material ambiguity in this case about the stage of the sentencing process at which the guideline range is "regularly determined." There is no "guideline range" determined before the court decides whether specific offense characteristics or adjustments from Chapters Two and Three apply to a defendant. The guideline range is determined only after those matters are resolved. USSG § 1B1.1(a)-(g). *Kemp* rejected the government's argument that the "advisory guideline range" necessarily referred to a range determined after an upward departure pursuant to USSG §§ 4A1.3 and 5K2.0. 530 F.3d at 723. We concluded that giving the defendant the benefit of the doubt, "advisory guideline range" could well mean the guideline range before any upward departure. *Id.* But *Kemp* is no help to Azure; it merely establishes that the phrase "regularly determined guideline range" in Azure's plea agreement may refer, when interpreted favorably to the defendant, to the guideline range determined before any upward departure. If that is the phrase's meaning, then Azure's agreement allows an appeal of a sentence when it is greater than the pre-departure guideline range. Azure, however, seeks to appeal a sentence *within* a pre-departure guideline range, so the waiver applies.

The colloquy between the court and Azure at the change of plea hearing reinforces our conclusion that Azure reasonably understood that he waived his right to appeal under these circumstances. The district court clearly advised Azure that his guilty plea would waive his right to appeal any sentence that was within the advisory

guideline range. The court explained that "if I sentence you within the sentencing guidelines that are found to apply to you, you're giving up your right to appeal that sentence," and then again that "if I sentence you within the sentencing guideline range found to apply to you, you are waiving your right to appeal that sentence to a higher court." Azure acknowledged that he understood these admonitions. The district court's comments plainly referred to the guideline range ultimately found by the court, and the explanations served to clarify and reinforce the waiver set forth in the written plea agreement. *See United States v. Wilken*, 498 F.3d 1160, 1167-68 (10th Cir. 2007) (noting that a court's statements prior to accepting a waiver of appellate rights can eliminate ambiguity in the waiver).

Azure contends that even if the written waiver and plea colloquy establish an unambiguous waiver, some of the district court's statements during the sentencing hearing – suggesting that Azure could appeal certain conclusions reached by the court at sentencing – render the waiver unenforceable. This argument encounters a formidable obstacle in *United States v. Michelsen*, 141 F.3d 867 (8th Cir. 1998), where we concluded that "[a]ny statement by the court at the sentencing hearing could not have affected [the defendant's] decision, made nearly three months earlier, to plead guilty and waive his appellate rights." *Id.* at 872. Azure asserts that his situation is distinguishable, because the court in *Michelsen* merely recited boilerplate language from the rules of criminal procedure that the defendant "may appeal this sentence within ten days after the filing of the judgment," *id.*, whereas the district court in this case specifically advised that Azure could appeal the court's application of two specific offense characteristics, *i.e.*, the four-level increase for use of a dangerous weapon during the altercation, and the two-level increase for violating a court protection order.[2]

---

[2]Azure points to this exchange near the end of the sentencing hearing:

THE COURT: There was a provision in your plea agreement where you

While the court's statements in this case were more specific than those of the sentencing judge in *Michelsen*, the *logic* of *Michelsen*'s legal conclusion is fully applicable here. *Michelsen* did not turn on the specificity of the district court's comments at sentencing, but rather on the timing of the statements, and the impossibility that statements by the court at a sentencing hearing could have influenced a decision made by the defendant at a previous guilty plea hearing. As in *Michelsen*, whatever the court said at Azure's sentencing hearing "could not have affected [his] decision, made nearly three months earlier, to plead guilty and waive his appellate rights." 141 F.3d at 872; *see also United States v. Fisher*, 232 F.3d 301, 304 (2d Cir. 2000) ("If enforceable when entered, the waiver does not lose its effectiveness because the district judge gives the defendant post-sentence advice inconsistent with the waiver. No justifiable reliance has been placed on such advice.").

At any rate, Azure's argument fails even on its own terms. Even assuming that the district court's comments at sentencing limited the scope of the appeal waiver, Azure's appeal does not seek to take advantage of that limitation. The only issues raised by Azure on appeal are that the court committed procedural error when imposing sentence, and that the court should have applied a 90-day credit for time that Azure served in tribal jail. Azure does not challenge either of the two specific offense

---

waived your right to appeal as long as you were sentenced within the sentencing guideline range that was found to apply to you.

THE DEFENDANT: But I was not.

THE COURT: Well, that's – the million dollar question on appeal. And obviously the appeal issues would concern the sentencing guidelines that were triggered in this case . . . namely, the use of teeth as a dangerous weapon and the violation of the Court protection order, but you can – you can certainly appeal those issues if you wish to do so.

(S. Tr. at 34).

characteristics that were mentioned during the colloquy that Azure now says effectively nullified his previous appeal waiver. Azure's proposed distinction of *Michelsen*, therefore, provides no basis to reach the issues raised on appeal.

For these reasons, we conclude that Azure knowingly and voluntarily waived his right to appeal a sentence within the advisory guideline range. Enforcement of the waiver will not result in a "miscarriage of justice" as defined by this court. *See Andis*, 333 F.3d at 891. Accordingly, the appeal is dismissed.

_____