**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4663**

UNITED STATES OF AMERICA,

                  Plaintiff – Appellee,

        v.

PAUL ANTHONY HOLMES, a/k/a Pauly,

                  Defendant – Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Columbia.   Cameron McGowan Currie, District
Judge.  (3:08-cr-00604-CMC-1)

Submitted:  August 5, 2010          Decided:  September 9, 2010

Before SHEDD, DUNCAN, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Marcia G. Shein, LAW OFFICES OF MARCIA G. SHEIN, P.C., Decatur,
Georgia, for Appellant.  Kevin F. McDonald, Acting United States
Attorney, Jeffrey Mikell Johnson, Assistant United States
Attorney, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Paul Anthony Holmes appeals his sentence following a guilty plea to conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846 (2006). Holmes challenges the district court's decision to give him a four-level role adjustment pursuant to USSG § 3B1.1(a), and a two-level obstruction of justice increase pursuant to USSG § 3C1.1.


I.   Role in the Offense

This court reviews sentencing adjustments based on a defendant's role in the offense for clear error. United States v. Sayles, 296 F.3d 219, 224 (2002). We may affirm a sentence enhancement for any reason appearing in the record. United States v. Garnett, 243 F.3d 824, 830 (4th Cir. 2001).

A defendant's offense level is to be increased by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants." USSG § 3B1.1(a). A "participant" is someone who can be held "criminally responsible" for the commission of the offense. See USSG § 3B1.1 cmt. 4. The following factors should be considered in determining whether a role adjustment is warranted:

> (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the

2

claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

See United States v. Kellam, 568 F.3d 125, 148 (4th Cir. 2009) (citing USSG § 3B1.1 cmt. 4).

However, a defendant need only exercise control over one other participant in order to be deemed a leader or organizer. See USSG § 3B1.1 cmt. 2. This is "not a particularly onerous showing," requiring "only a conclusion that [the defendant] supervised at least one . . . participant," and it "does not require the court to identify specific examples." See United States v. Hamilton, 587 F.3d 1199, 1222 (10th Cir. 2009) (citations omitted). Moreover, once the court has determined that the defendant exercised some control over at least one participant, it need look no further into whether or not the defendant exercised control over others. Id. at 1223.

Taking the record as a whole, there is ample evidence to support the district court's determination that Holmes was a leader or organizer of a criminal enterprise consisting of five or more people. First, the Government's unopposed summary of the evidence at Holmes' plea colloquy establishes that he was a part of a criminal conspiracy comprised of at least five individuals, and that his co-defendant, Shaheed Chaplin, was his "right hand person." While Holmes's acquiescence to these facts

3

is arguably enough to establish not only the minimum threshold size of his organization, but also that he exercised control over Chaplin, thereby ending this Court's inquiry, the testimony offered at sentencing largely substantiates the Government's claims.  Cf. United States v. Reid, 523 F.3d 310, 317 (4th Cir. 2008) ("buy-sell transaction[s]" and "continuing relationships," coupled with a large quantity of drugs, support an inference that the parties were co-conspirators) (citations omitted).

Onza Lynch, a cooperating co-conspirator, whom the district court credited, made clear that there were at least eight individuals working for Holmes.  Moreover, the number of co-conspirators included in the organization would no doubt increase dramatically if the court were to include the various other lower-level dealers that the testimony established Holmes supplied.  Cf. United States v. Fells, 920 F.2d 1179, 1182-83 (4th Cir. 1990) (counting lower-level drug dealers, but not end users, in computation of organizational size).  Accordingly, the district court did not clearly err with regard to its calculations of the size of Holmes' criminal enterprise.

As for the level of control Holmes had over his cohorts, the testimony elicited at sentencing, as credited by the district court, clearly established that Holmes was a leader and/or organizer of his group.  In addition to being the primary supplier to several street level dealers and personally

4

trafficking large quantities of drugs, Holmes retained decision-making authority over his drugs and the people working under him. He set his own prices and negotiated arrangements with lower-level dealers as needed. Moreover, it is clear that Holmes possessed the initial knowledge necessary to package and distribute the drugs, which he passed on to his co-conspirators.

Holmes also decided who could work for him. He screened new dealers to determine if they were suitable candidates, and "laid down the law" to recruits as to how financial obligations were to be handled. He provided other dealers with samples of his wares, made initial arrangements, and then passed them off to his underlings for day-to-day servicing, no doubt in an effort to lower his profile and/or reduce his criminal exposure.

Holmes also clearly claimed a right to a larger share of the proceeds of his drug sales than his co-conspirators. The testimony of multiple witnesses indicated that Holmes would set his price and then "front" drugs to his dealers, essentially on credit, to sell for him; the dealers would make a profit only if they were able to sell the drugs for more than Holmes claimed as his own share. Invariably, the testimony indicated that Holmes made more off each transaction than his lower-level dealers did, and more importantly, it showed that Holmes took priority when it was time to "settle up."

Holmes argues that the district court erred by giving him a four-level role adjustment because, he contends, the evidence does not establish that he is anything more than a mere seller of drugs. Holmes argues that because his relationships with Chaplin, Lynch, and the various other downstream dealers he supplied were informal and non-exclusive, and because he sold drugs on a consignment basis, he is somehow less of an organizer or leader. Holmes has failed to cite to any case or authority that would tend to indicate that either of these factors has any direct bearing on whether or not he is a leader or organizer of the conspiracy to which he plead guilty.

This court has never held that a criminal enterprise must have a rigid structure or be the only criminal enterprise its members are a part of before conspiratorial criminal liability can attach. Cf. United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996) (en banc) ("while many conspiracies are executed with precision, the fact that a conspiracy is loosely-knit, haphazard, or ill-conceived does not render it any less a conspiracy — or any less unlawful"). Thus, it would seem counterintuitive to allow an organizer of such a conspiracy to escape liability simply by virtue of the "loose-knit" or "haphazard" nature of his plans. As stated above, under § 3B1.1, the Government need only establish that a defendant

6

exercised control over one of his co-conspirators, not that he exercised rigid or exclusive control over any of them.

Moreover, the selling of drugs on consignment does not create a wall between a seller and his downstream co-conspirators in the way that Holmes seems to contend. A dealer who consigns or "fronts" drugs to a lower-level dealer with the expectation that the drugs will be sold and he will be repaid from the proceeds of those retail sales "overstep[s] a mere seller's role," and assumes a control position. See United States v. Pena, 67 F.3d 153, 156 (8th Cir. 1995); United States v. Atkinson, 85 F.3d 376, 378 (8th Cir. 1996).

Thus, Holmes cannot hide behind the structure of his arrangements with his underlings to insulate himself from leadership liability in this conspiracy. Contrary to what Holmes argues, the nature of his arrangements only supports the conclusion that he retained control, not that he relinquished it. Accordingly, we find that the district court did not clearly err in giving Holmes a four-level adjustment for his role in the conspiracy.[*]

---

[*] Holmes has also argued that the district court erred by not explicitly considering a lesser enhancement under USSG §§ 3B1.1(b) or (c); however, Holmes has failed to cite to any authority to support this argument and we are not aware of any. Under these circumstances, we think a lesser enhancement under either subsection (b) or (c) would have been inappropriate.

7

## II. Obstruction of Justice

Holmes has also challenged the district court's two-level enhancement for obstruction of justice under § 3C1.1. The enhancement was based on the court's findings that while Holmes and a co-conspirator, Lynch, were incarcerated at the same facility, Holmes threatened to expose Lynch as a government snitch if Lynch testified against him, and that Holmes had arranged for a $25,000 bounty for Lynch's murder if Lynch continued to cooperate with the authorities. Holmes maintains the court failed to give him adequate notice that it would consider the enhancement, and that the uncorroborated testimony of Lynch was an insufficient basis to find that he qualified for the enhancement. Both arguments lack merit.

Holmes' arguments concerning the sufficiency of the evidence are reviewed for clear error. United States v. Hughes, 401 F.3d 540, 560 (4th Cir. 2005). We believe there is ample evidence in the record to support Holmes' two-level enhancement for threatening Lynch.

The main thrust of Holmes' argument is to contest Lynch's credibility and to insist that he not be believed in the absence of corroborative evidence. However, there is, of course, no requirement that the Government provide corroboration for Lynch's testimony, and this Court will not substitute its

8

credibility determinations for that of the district court. <u>Cf.</u> <u>United States v. Murray</u>, 65 F.3d 1161, 1165 (4th Cir. 1995).

Even without Lynch's testimony that Holmes put a $25,000 bounty on his head, Holmes' own words more than adequately establish that he threatened Lynch with the intent to intimidate him or prevent him from testifying. In a letter to the district court, Holmes admitted calling Lynch a "snitch" and a "rat," and threatening to expose Lynch as such in the prison yard. This alone is an adequate ground to support an obstruction of justice enhancement. <u>See</u> <u>United States v. Jackson</u>, 974 F.2d 104, 105-106 (9th Cir. 1992) (disseminating information that a cooperating witness is a "snitch" and a "rat" to others can "potentially chill [the witness'] willingness to testify"); <u>United States v. Hurst</u>, 228 F.3d 751, 761-62 (6th Cir. 2000) (inciting other inmates to harm cooperating witness warranted obstruction enhancement). Accordingly, the district court did not clearly err by finding that Holmes obstructed justice.

In support of his alternate argument, that the district court erred by failing to give him reasonable notice that it would consider imposing an obstruction enhancement, Holmes cites to Federal Rule of Criminal Procedure 32(h), which states that:

> Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

The Government counters by arguing that Rule 32(h) applies only to "departures," and that an adjustment under § 3C1.1 is not a "departure," but instead an inherent part of a defendant's guideline sentence, and that no notice was required. We need not address the Government's claim at this time, as Holmes has failed to show a reversible error in any event.

Because Holmes failed to object to the district court's allegedly inadequate notice below, this Court must review for plain error. See United States v. McClung, 483 F.3d 273, 276 (4th Cir. 2007). To establish plain error, Holmes must show that an error (1) was made, (2) is plain (i.e., clear or obvious), and (3) affects his substantial rights. United States v. Massenburg, 564 F.3d 337, 342-43 (4th Cir. 2009). Even if Holmes makes this three-part showing, this Court may exercise its discretion to correct the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. at 343 (internal quotation marks omitted).

Even assuming that the district court was required to provide notice to Holmes and that its notice was inadequate,

10

Holmes has still not shown that the court's alleged failing affected his substantial rights. Holmes does not substantively address the fact that his own letter sealed his fate just as much as the testimony of Lynch did, except to say in completely conclusory fashion that had he received notice, "it very likely would have affected the outcome of the sentencing proceeding." At no point does Holmes ever explain how receiving notice, assuming he was entitled to receive it, would have changed the fact that he admitted to behavior justifying the enhancement. Therefore, Holmes has failed to carry his burden of establishing that the district court committed plain error by failing to notify him that it might enhance his sentence for obstructing justice.

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

11