# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-2173

_____

United States of America

*Plaintiff - Appellee*

v.

Alejandro Valencia, also known as Pablo Villanueva-Acosta

*Defendant - Appellant*

_____

No. 15-2192

_____

United States of America

*Plaintiff - Appellee*

v.

Eric Octavio Rangel-Ortega

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 12, 2016
Filed: July 22, 2016
_____

Before GRUENDER and KELLY, Circuit Judges, and ERICKSEN,[1] District Judge.

_____

GRUENDER, Circuit Judge.

Alejandro Valencia and Eric Octavio Rangel-Ortega pleaded guilty to several drug-related offenses. The district court[2] sentenced Valencia to 292 months' imprisonment and Rangel-Ortega to 240 months' imprisonment. Both Valencia and Rangel-Ortega now appeal, arguing that the district court erred by enhancing their sentences based on their roles in the offenses. We dismiss Rangel-Ortega's appeal, and we affirm Valencia's sentence.

I.

In 2012, law enforcement began investigating a Mexico-based drug-trafficking organization operating in Kansas City. The local recipients of the imported cocaine and methamphetamine were Alejandro Valencia and Eric Octavio Rangel-Ortega. From October 2012 to January 2013, undercover investigators conducted several controlled purchases of methamphetamine from Rangel-Ortega. When Rangel-Ortega returned to Mexico in early 2013, he referred the investigators to his partner Valencia for future methamphetamine purchases. Prior to each transaction, the undercover

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

officer contacted Rangel-Ortega to ensure Valencia would complete the sale. In total, the investigators conducted five controlled purchases from Valencia.

Following these events, a grand jury indicted Rangel-Ortega and Valencia. Rangel-Ortega pleaded guilty to conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Valencia pleaded guilty to conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine and 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; conspiracy to import five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 963; and bulk cash smuggling, in violation of 31 U.S.C. § 5332(a)(1). In addition, both men pleaded guilty to conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(I). The two plea agreements contained the same appellate waiver:

> [T]he defendant expressly waives the right to appeal any sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious errors, such as misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence.

At Rangel-Ortega's change-of-plea hearing, the district court examined him to ensure that he understood the components of the plea agreement. The court reminded Rangel-Ortega that he was waiving his appellate rights on all but three grounds: ineffective assistance of counsel, prosecutorial misconduct, and imposition of an illegal sentence. Rangel-Ortega confirmed his understanding of the agreement and the rights he waived. The district court then accepted Rangel-Ortega's plea.

-3-

The court referred Valencia's change-of-plea hearing to a magistrate judge. The magistrate judge confirmed that Valencia had read, understood, and consulted an attorney about the plea agreement. However, the magistrate judge misstated the scope of Valencia's appellate waiver by informing him that he only waived the right to appeal "as long as the sentence is reasonable and not greater than the statutory maximums." Valencia confirmed his understanding of this summary, and the district court accepted his plea in accordance with the magistrate judge's recommendation.

The presentence investigation reports for both Rangel-Ortega and Valencia recommended an enhancement under USSG § 3B1.1 based on their leadership roles in the drug-trafficking offenses. Both men objected to this enhancement, arguing that the evidence did not support its imposition. As a result, the Government called Special Agent Matt Hall of the Department of Homeland Security to testify at each sentencing hearing.

At Rangel-Ortega's sentencing hearing, Special Agent Hall testified that Rangel-Ortega told undercover officers that he could obtain whatever they desired through his connections in Mexico. Agent Hall also testified that the freedom with which Rangel-Ortega crossed the border—despite his illegal status—displayed that he was well connected and that he had mid-level status within the drug organization. In addition, Agent Hall stated that Rangel-Ortega's supervisory authority was demonstrated by the fact that even after he left the country, he orchestrated an undercover officer's contact with Valencia in order to facilitate additional drug purchases. Finally, Agent Hall testified that Valencia sent money from the local Kansas City transactions to Rangel-Ortega. Based on this testimony, the court overruled Rangel-Ortega's objection and applied the four-level sentencing enhancement pursuant to USSG § 3B1.1(a) for Rangel-Ortega's role as an organizer or leader of a criminal activity that involved five or more participants or that was otherwise extensive. The court ultimately varied downward from Rangel-Ortega's

advisory sentencing guidelines range of 262-327 months to impose a sentence of 240 months' imprisonment.

At Valencia's sentencing hearing, Agent Hall described Valencia as the organization's point of contact in Kansas City. Agent Hall testified that undercover agents made several purchases from Valencia after Rangel-Ortega went to Mexico. Agent Hall also explained that law enforcement had intercepted thirty-one hours of phone conversations between members of the drug-trafficking ring. During one of these intercepted conversations, Valencia provided directions to two couriers who were bringing a shipment of drugs from Mexico to Kansas City. As part of this transaction, Valencia also called the girlfriend of the drug-trafficking organization's supplier and told her to bring a scale so he could weigh the cocaine. Finally, after the transaction, Valencia contacted the organization's supplier to report that the $330,000 transaction had been successful.

Agent Hall also testified that Valencia called a local drug dealer when a new drug shipment arrived. Valencia referenced collecting payment from this seller and alluded to the fact that he had fronted cocaine to the dealer in the past. Based on the agent's testimony, the court rejected Valencia's objection and imposed a three-level enhancement under § 3B1.1(b) for Valencia's role as a manager or supervisor in a criminal activity involving five or more participants or that was otherwise extensive. The court then imposed a sentence of 292 months' imprisonment, a sentence at the bottom of Valencia's advisory guidelines range of 292-365 months.

II.

On appeal, Rangel-Ortega and Valencia challenge the district court's decision to impose the sentencing guidelines enhancements based on their roles in the offenses. Rangel-Ortega contends that the district court erred when it applied the four-level enhancement under USSG § 3B1.1(a) because the decision was not based

on the factors laid out in the Guidelines. Valencia argues that the district court erred by improperly applying the three-level enhancement under USSG § 3B1.1(b) because the enhancement was not supported by the evidence. The Government responds that both appeals should be dismissed because the waivers in Rangel-Ortega's and Valencia's plea agreements bar them from raising these appeals.

When a plea agreement contains an appellate waiver, our court generally will enforce it "as long as the appeal falls within the scope of the waiver, and the defendant's accession to the plea agreement was knowing and voluntary." *United States v. Azure*, 571 F.3d 769, 772 (8th Cir. 2009). The Government bears the burden of "establishing that the plea agreement clearly and unambiguously waives the defendant's right to appeal." *Id.* "We review de novo the issue of whether a defendant has knowingly and voluntarily waived rights in a plea agreement." *United States v. Selvy*, 619 F.3d 945, 949 (8th Cir. 2010) (quoting *United States v. Swick*, 262 F.3d 684, 686 (8th Cir. 2001)). Even when the agreement is unambiguous and the waiver is knowing, however, we refrain from enforcing the waiver if enforcement would result in a miscarriage of justice. *Azure*, 571 F.3d at 772.

We begin with Rangel-Ortega's appeal. Rangel-Ortega's plea agreement stated that he "expressly waive[d] the right to appeal any sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence." The agreement defined an "illegal sentence" as a sentence imposed in excess of the statutory maximum, but not a sentence affected by "less serious sentencing errors, such as misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence." Although Rangel-Ortega argues that his advisory sentencing guidelines range was calculated improperly, he does not contend that the sentence was illegal—*i.e.*, that it exceeded the statutory maximum. Indeed, his 240-month sentence falls far below the statutory-maximum sentence of life imprisonment available for his convictions. "We have repeatedly held that, in the face of a valid appeal waiver, any sentence within the

statutory range is not subject to appeal" as an illegal sentence. *United States v. Sisco*, 576 F.3d 791, 795 (8th Cir. 2009). This holding is consistent with the language of his waiver defining an "illegal sentence" exclusively as a sentence in excess of the statutory maximum. Rangel-Ortega's challenge to the enhancement is a challenge to the court's application of the Guidelines, and it thus falls squarely within the scope of his waiver.

We further conclude that Rangel-Ortega's waiver was knowing and voluntary. At the change-of-plea hearing, the district court questioned Rangel-Ortega to confirm that he fully understood the plea agreement and that he had consulted his attorney about its contents. The court then informed Rangel-Ortega that his plea agreement contained an appellate waiver and asked Rangel-Ortega if he understood that he waived the right to appeal the sentence imposed on any ground other than ineffective assistance of counsel, prosecutorial misconduct, or an illegal sentence. *See United States v. Andis*, 333 F.3d 886, 890-91 (8th Cir. 2003) (en banc) ("One important way a district court can help ensure that a plea agreement and corresponding waiver are entered into knowingly and voluntarily is to properly question a defendant about his or her decision to enter that agreement and waive the right to appeal."). Rangel-Ortega replied that he understood, and he acknowledged that he would be bound by the agreement's terms. He further indicated that he entered into the plea voluntarily and that he was satisfied with his counsel's performance. In light of this colloquy and Rangel-Ortega's responses, we see no barrier to enforcing the waiver on this ground. *See United States v. Guzman*, 707 F.3d 938, 942 (8th Cir. 2013) (finding a waiver knowing and voluntary when the defendant confirmed his understanding at his change-of-plea hearing).

Finally, we conclude that enforcement of the waiver will not result in a miscarriage of justice. *Andis*, 333 F.3d at 891. "Although we have not provided an exhaustive list of the circumstances that might constitute a miscarriage of justice, we

recognize that these waivers are contractual agreements between a defendant and the Government and should not be easily voided by the courts." *Id.* Here, Rangel-Ortega raises only a challenge to the district court's application of the Guidelines to arrive at a sentence that falls below the statutory maximum. Having reviewed the record, we find that his claim does not trigger the miscarriage-of-justice exception. *See United States v. Boroughf*, 649 F.3d 887, 890 (8th Cir. 2011) ("'[A]n allegation that the sentencing judge misapplied the Sentencing Guidelines or abused his or her discretion' does not, in the face of a valid appeal waiver, constitute a miscarriage of justice." (quoting *Andis*, 33 F.3d at 892)). We decline Rangel-Ortega's invitation to unnecessarily broaden this exception, and we therefore dismiss his appeal.

Although his plea agreement contained the same appeal waiver, Valencia's appeal requires a different analysis. At the change-of-plea hearing, the magistrate judge misstated the waiver's scope by advising Valencia that he would be unable to appeal only if "the sentence is reasonable and not greater than the statutory maximums." The Government did not object to this statement. Given the magistrate judge's misstatement, we elect to resolve the present appeal by assuming without deciding that Valencia's waiver does not preclude his present challenge.[3] *See United States v. Jones*, 756 F.3d 1121, 1122 n.2 (8th Cir. 2014) (per curiam) (assuming that the waiver did not preclude the appeal and addressing the merits). Accordingly, we turn to the merits.

---

[3]Several of our sister circuits have held that "[w]hen a district court has advised a defendant that, contrary to the plea agreement, he is entitled to appeal his sentence, the defendant can hardly be said to have knowingly waived his right of appeal." *United States v. Manigan*, 592 F.3d 621, 628 (4th Cir. 2010); *accord United States v. Zink*, 107 F.3d 716, 718 (9th Cir. 1997); *United States v. Ready*, 82 F.3d 551, 557-58 (2d Cir. 1996), *superseded on other grounds by United States v. Cook*, 722 F.3d 477, 481 (2d Cir. 2013).

Valencia argues that the district court erred when it applied a sentencing guidelines enhancement based on his role as a manager or supervisor of a criminal activity that involved five or more participants or that was otherwise extensive. *See* USSG § 3B1.1(b). He raises no argument regarding the court's finding on the number of participants or the extensiveness of the criminal activity; instead, he argues that the court erred by finding that he held a supervisory role. We review the court's factual finding of a defendant's role in the offense for clear error. *United States v. Pena*, 67 F.3d 153, 156 (8th Cir. 1995).

Our court has "defined the terms 'manager' and 'supervisor' quite liberally." *United States v. Lopez*, 431 F.3d 313, 318 (8th Cir. 2005). "[A] defendant can be subject to this enhancement for having managed or supervised only one other participant in the criminal conspiracy." *Id.* "In addition, the manager or supervisor enhancement 'may apply even if the management activity was limited to a single transaction.'" *Id.* (quoting *United States v. Zimmer*, 299 F.3d 710, 724 (8th Cir. 2002)). "The key factors in determining management or supervisory authority are control over participants and organization of the criminal activity." *Pena*, 67 F.3d at 156-57. The court must consider the defendant's exercise of decision-making authority, the nature of his participation in the offense, and his degree of participation in planning or organizing the activity. USSG § 3B1.1 cmt. n.4.

We conclude that the court did not clearly err when it found that Valencia acted as a manager or supervisor for the drug-distribution ring. The evidence showed that Valencia directed other members of the organization and enlisted their aid during at least one drug shipment. *See United States v. Bahena*, 223 F.3d 797, 804 (8th Cir. 2000). Agent Hall testified that he intercepted a phone conversation in which Valencia gave directions to two couriers who were bringing drugs to Kansas City. In the intercepted phone conversation, Valencia dictated the details of the shipment. He told the couriers to meet him at a specific location, and he explained that he would

switch vehicles with the couriers in order to take the drugs to a stash house. Once he brought the drugs to the stash house, Valencia enlisted the aid of another drug-ring participant by calling her and telling her to bring a scale to weigh the new shipment of cocaine. Valencia then drove the empty van back to the couriers and gave them money. This testimony showed that Valencia personally managed the transaction and was responsible for ensuring that the deal took place. Such conduct was sufficient to support the three-level § 3B1.1 enhancement. *See United States v. Moreno*, 679 F.3d 1003, 1004 (8th Cir. 2012) (per curiam) (affirming a three-level enhancement when the defendant acted as the conspiracy leader's "eyes and ears" by ensuring that "the operation went according to plan and that the proceeds got back to California"); *United States v. Flores*, 73 F.3d 826, 836 (8th Cir. 1996) (upholding a § 3B1.1 enhancement after finding that the defendant was entrusted with ensuring "the $200,000 deal got done").

In addition, the court heard that Valencia fronted drugs to a local seller. We previously have recognized that such conduct—while not independently sufficient to support a § 3B1.1(b) enhancement, *see United States v. Del Toro-Aguilera*, 138 F.3d 340, 343 (8th Cir. 1998)—is relevant to the court's analysis of the defendant's role in the offense because it demonstrates that the defendant "retained the financial risk of distribution." *Pena*, 67 F.3d at 156. Here, the evidence that Valencia assumed such risk reinforced the conclusion that Valencia "overstepped a mere seller's role," *id.*, in the criminal activity. Accordingly, we conclude that the court did not clearly err by finding that Valencia acted as a manager or supervisor. We therefore uphold the court's decision to apply the three-level enhancement to his sentence.

## III.

For the foregoing reasons, we affirm Valencia's sentence, and we dismiss Rangel-Ortega's appeal.

_____