**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 15-4347**

———————

UNITED STATES OF AMERICA,

              Plaintiff – Appellee,

      v.

ISHMAEL BAITH FORD-BEY, a/k/a Jason Green,

              Defendant - Appellant.

———————

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Deborah K. Chasanow, Senior District
Judge.  (8:13-cr-00492-DKC-2)

———————

Submitted:  September 15, 2016      Decided:  October 12, 2016

———————

Before DUNCAN and FLOYD, Circuit Judges, and DAVIS, Senior
Circuit Judge.

———————

Affirmed in part; vacated and remanded in part by unpublished
per curiam opinion.

———————

Marvin D. Miller, LAW OFFICES OF MARVIN D. MILLER, Alexandria,
Virginia, for Appellant. Rod J. Rosenstein, United States
Attorney, Deborah A. Johnston, Thomas P. Windom, Assistant
United States Attorneys, Greenbelt, Maryland, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ishmael Baith Ford-Bey appeals his 396-month sentence imposed pursuant to his guilty plea to various drug and money laundering charges. On appeal, Ford-Bey challenges his leadership role enhancement, his firearm enhancement, and the drug quantity attributed to him. We conclude that the district did not err in applying an enhancement for Ford-Bey's role in the offense or in calculating the applicable drug quantity. However, we find that the firearm enhancement was improper, and thus, we vacate Ford-Bey's sentence and remand for resentencing.

I.

We review sentencing adjustments based on a defendant's role in the offense for clear error. United States v. Sayles, 296 F.3d 219, 224 (2002). In addition, we may affirm a sentence enhancement for any reason appearing in the record. United States v. Garnett, 243 F.3d 824, 830 (4th Cir. 2001) (appellate courts may "affirm [sentence enhancements] on the basis of 'any conduct [in the record] that independently and properly should result in an increase in the offense level' by virtue of the enhancement") (citation omitted). A defendant's offense level is to be increased by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants." U.S. Sentencing Guidelines Manual

§ 3B1.1(a) (2014).  The following factors should be considered in determining whether a role adjustment is warranted:

> (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

See United States v. Kellam, 568 F.3d 125, 148 (4th Cir. 2009) (citing USSG § 3B1.1 cmt. 4).

However, a defendant need only exercise control over one other participant in order to be deemed a leader or organizer. USSG § 3B1.1 cmt. 2.  This is "not a particularly onerous showing," requiring "only a conclusion that [the defendant] supervised at least one . . . participant," and it "does not require the court to identify specific examples."  See United States v. Hamilton, 587 F.3d 1199, 1222 (10th Cir. 2009) (citations omitted).  Moreover, once the court has determined that the defendant exercised some control over at least one participant, it need look no further into whether or not the defendant exercised control over others.  Id. at 1223.

Taking the record as a whole, there is ample evidence to support the district court's determination that Ford-Bey was a leader or organizer of a criminal enterprise consisting of five or more people.  First, it is undisputed that the organization

consisted of five or more people. As for the level of control Ford-Bey had over his cohorts, the evidence presented at sentencing clearly established that Ford-Bey was a leader and/or organizer of his group. In addition to being the top of the supply stream for tens of millions of dollars worth of cocaine, Ford-Bey received large, monthly drug shipments from January 2011 until August 2012. Ford-Bey directed the truck driver to the particular location for delivery of the shipment. In addition, Ford-Bey sent his "brother" to meet the truck driver on at least one occasion and directed the truck driver to give the shipment to the brother. Ford-Bey paid the truck driver to take money back to his supplier. The evidence also shows that Ford-Bey retained the authority to decide whether money would be going back with the truck driver. In addition, the evidence showed that at least one co-conspirator sold drugs he received from Ford-Bey and collected payments that he delivered to Ford-Bey.

While Ford-Bey asserts that the evidence merely shows buyer-seller relationships between him and his supplier and those to whom he sold drugs, we have never held that a criminal enterprise must have a rigid structure or be the only criminal enterprise its members are a part of before conspiratorial criminal liability can attach. Cf. United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996) (en banc) ("[W]hile many

conspiracies are executed with precision, the fact that a conspiracy is loosely-knit, haphazard, or ill-conceived does not render it any less a conspiracy — or any less unlawful."). As stated above, under § 3B1.1, the Government need only establish that a defendant exercised control over one of his co-conspirators, not that he exercised rigid or exclusive control over any of them. Moreover, the selling of drugs on consignment does not create a wall between a seller and his downstream co-conspirators. In fact, a dealer who "fronts" drugs to a lower-level dealer with the expectation that the drugs will be sold and he will be repaid from the proceeds of those sales "overstep[s] a mere seller's role," and assumes a control position. See United States v. Pena, 67 F.3d 153, 156 (8th Cir. 1995); United States v. Atkinson, 85 F.3d 376, 378 (8th Cir. 1996).

Where a defendant "retain[s] the financial risk of a distribution by fronting or consigning the drugs," to another dealer, he remains invested in the ultimate distribution of those drugs to their end-users and retains a certain measure of control over those drugs and/or the dealer he has tasked with selling them. See generally Pena, 67 F.3d at 156-157. Thus, Ford-Bey cannot hide behind the technical structure of his arrangements with his coconspirators to insulate himself from leadership liability in this conspiracy. Accordingly, the

5

district court did not commit clear error in giving Ford-Bey a four-level adjustment for his role in the conspiracy.

## II.

Section 2D1.1(b)(1) of the Guidelines directs a district court to increase a defendant's offense level by two levels "[i]f a dangerous weapon (including a firearm) was possessed." The enhancement is proper when the weapon at issue "was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction," United States v. Manigan, 592 F.3d 621, 628-29 (4th Cir. 2010) (internal quotation marks omitted), even in the absence of "proof of precisely concurrent acts, for example, gun in hand while in the act of storing drugs, drugs in hand while in the act of retrieving a gun." United States v. Harris, 128 F.3d 850, 852 (4th Cir. 1997) (internal quotation marks omitted). Nonetheless, the Government has the burden of establishing by a preponderance of the evidence "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." United States v. Romans, 823 F.3d 299, 317 (5th Cir. 2016), petition for cert. filed, (July 6, 2016). Under this standard, "the Government must show that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred." Id. Once the Government has met its

6

burden, the defendant can avoid the enhancement by showing that "it is clearly improbable that the weapon was connected with the offense." Harris, 128 F.3d at 852.

The district court ruled that a handgun was found in Ford-Bey's residence at a time when he was significantly involved in drug trafficking and that Ford-Bey attempted to go back to his residence after a drug delivery went bad. Ford-Bey contends that the Government failed to connect the firearm to any activity or place where drug dealing occurred and notes that no drugs or drug paraphernalia were found at his home.

The only even marginally drug-related items found in Ford-Bey's home were many luxury items that were presumably purchased with drug proceeds and were forfeited as such. However, the Government does not cite any case law supporting the conclusion that a firearm found in close proximity to items purchased with drug proceeds satisfies the nexus requirement of USSG § 2D1.1. Although the proceeds are circumstantial evidence of Ford-Bey's drug dealing, their presence in his home does not establish that any drug transactions took place there. See Romans, 823 F.3d at 318-19. Further, there is no evidence that Ford-Bey ever carried a gun with him during his drug dealings. Given the absence of evidence that the weapon was in the same location as drugs or drug paraphernalia or that the weapon was where any part of any drug transaction took place, the

7

Government has failed to meet its burden of showing the necessary nexus. Thus, the district court's enhancement was clearly erroneous. Accordingly, we vacate Ford-Bey's sentence and remand for resentencing.

III.

A defendant convicted of conspiring to distribute controlled substances is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were in furtherance of the joint criminal conduct and were reasonably foreseeable to the defendant. USSG § 1B1.3 cmt. n.3. The Government must prove the drug quantity attributable to the defendant by a preponderance of the evidence. United States v. Carter, 300 F.3d 415, 425 (4th Cir. 2002). A district court's findings on drug quantity are generally factual in nature and therefore, are reviewed by this court for clear error. Id.

The district court noted that the threshold amount for the highest offense level was 450 kilograms of cocaine. The court reasoned that, between March and August 2012, there were seven clusters of calls between the truck driver and Ford-Bey. The court ruled that "there's not reason for Mr. Ford-Bey to be talking to this truck driver except when this truck driver is here delivering the cocaine." Although the court did not do any

8

specific calculations, it determined that, "with just the truck driver," the amount seized from the last delivery, and the telephone records, the amount is well over 450 kilograms. Ford-Bey contends that the district court's finding is strictly speculation and that the prior deliveries could well have been marijuana, as the driver believed.

We conclude that the district court's calculations were properly based on the truck driver's testimony and the corroborating phone records. While the truck driver initially believed that he was hauling marijuana, he realized later that he had been transporting cocaine. The appearance of the boxes and the procedure never changed, and the record provides no support for the conclusion that the contents of the boxes had been altered. Ford-Bey has come forward with no evidence that he was trafficking in marijuana up until the last shipment, and in fact, he pled guilty to a cocaine conspiracy covering several years.

Moreover, the court's calculations did not include any of the laundered money. The record reveals more than $500,000 in cash deposited into Ford-Bey's bank accounts during the relevant time period and the court ordered the forfeiture of more than $108,000,000 in cash and other items. The record reveals that a kilogram of cocaine cost could gross $80,000, when sold by the gram. Thus, the forfeited funds represent the sale of three

9

times the drug amount required for the offense level adopted by the district court.  Given the truck deliveries and the evidence regarding the drug proceeds, there is no clear error in the district court's ruling on drug quantity.

Accordingly, we affirm the district court's rulings regarding drug quantity and Ford-Bey's role in the offense. Because the firearm enhancement was clearly erroneous, we vacate Ford-Bey's sentence and remand for resentencing.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED IN PART;
VACATED AND REMANDED IN PART
