# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1382

———————

United States of America,      *
\*
Appellee,      *
\* Appeal from the United States
v.      * District Court for the
\* Southern District of Iowa.
Raul Munoz Lopez,      *
\*
Appellant.      *

———————

Submitted: September 14, 2005
Filed: December 13, 2005

———————

Before BYE, BRIGHT, and SMITH, Circuit Judges.

———————

SMITH, Circuit Judge.

Raul Munoz Lopez pled guilty to four felonies in connection with the distribution of methamphetamine. The district court[1] sentenced Lopez to 444 months. Lopez appeals his sentence, arguing that the sentence violates *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738 (2005). Finding no error, plain or otherwise, we affirm.

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

## I. *Background*

In March of 2003, Lopez attracted attention from the Iowa Division of Narcotics Enforcement during their investigation of methamphetamine traffic in Johnson County, Iowa. An undercover officer purchased 9.46 grams of methamphetamine from Lopez in a controlled buy. During this first transaction, Lopez boasted that he normally dealt "in pounds, not ounces." Approximately one week later, the officer bought an additional 14.16 grams of methamphetamine. In conjunction with this second sale, the officer arranged a third transaction for one pound of methamphetamine. Lopez met with the officer at the appointed time but appeared agitated and accused the undercover officer of being a cop. Despite his misgivings, Lopez proceeded with the deal and sold the agent 97.97 grams of methamphetamine.

The next month, officers negotiated a much larger purchase from Lopez that eventually reached 12 pounds. However, Lopez began to suspect that the person dealing with him was, in fact, a police officer. On April 10, 2003, Lopez met with an undercover agent at Sycamore Mall in Iowa City, Iowa. Lopez told the agent that he heard that a person named "Chuck," who matched the agent's physical description and drove a car similar to the agent's, was a police officer. The rumor was accurate, but Lopez still did not know for certain that he had been selling methamphetamine to Special Agent Charles Pettrone. Lopez remarked that if the police tried to take him down, someone would get killed.

While Lopez discussed the transaction with Pettrone, Delton Alexander, Lopez's accomplice, performed counter-surveillance for Lopez in the mall parking lot.[2] Lopez conferred briefly with Alexander after the meeting, then approached the

---

[2]During interrogation after the arrest of Lopez, Alexander admitted that Lopez had asked him to act as a lookout on this occasion and that he had done so.

undercover officer's car and accused him of being a police officer. Pettrone stated that he was just waiting for his girlfriend, and Lopez left the area.

Three days later, Pettrone and Daniel Stepleton, another undercover agent, met with Lopez in West Branch, Iowa, to purchase the agreed upon 12 pounds of methamphetamine for $84,000. After Lopez counted the money, he informed the agents that he would have to retrieve the drugs from another location. Lopez returned with the drugs and remained in the driver's seat of the car with the engine running and the transmission engaged. Pettrone saw the drugs on the front seat of Lopez's car, packaged in two bundles, each weighing six pounds. Pettrone removed one bundle of drugs through the passenger window. Pettrone signaled to concealed law enforcement officers to commence the arrest. The officers did not respond. Lopez, appearing very nervous, demanded the money immediately. Stepleton attempted to enter the rear passenger side of the vehicle to deliver the bag supposedly containing the money and to attempt to calm Lopez. When Lopez reached for the bag, Pettrone removed the second six-pound package from the front seat of the car.

Lopez began to panic. Lopez told Stepleton, who was partially in the vehicle, to get out, and then Lopez drove away hurriedly with Stepleton in the car. Stepleton moved to the center of the backseat and struggled with Lopez to stop the car. Stepleton testified that he screamed "I'm a police officer, stop the vehicle" into Lopez's ear. Lopez then retrieved a gun and used it to strike Stepleton repeatedly. Lopez then tried several times to fire the gun at Stepleton, but fortunately, the gun's safety device was never deactivated. The vehicle eventually crashed. Stepleton seized the gun and, with assistance from other arriving officers, arrested Lopez.

Based upon these events, Lopez was charged with the following four felonies: (1) conspiracy to distribute at least 500 grams of methamphetamine in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(viii); (2) distribution of at least 50 grams of methamphetamine in violation of 21 U.S.C. §§ 846, 841(b)(1)(B)(viii); (3) possession

of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and (4) unlawful reentry after deportation in violation of 8 U.S.C. § 1326(a). Lopez pleaded guilty to all counts.

At sentencing, the district court applied the United States Sentencing Guidelines as mandatory. Lopez's sentence was enhanced on several grounds, including three levels for assault on a law enforcement officer and three levels for being a supervisor or manager of a criminal activity with five or more participants. The district court sentenced Lopez to a total of 444 months of imprisonment.

## II. *Discussion*
### A. *Sentence Enhancements*

Lopez challenges the district court's sentence enhancements, which increased his sentence based upon victim identity (police officer) and role in the offense (manager or supervisor). He also challenges the district court's determination of drug quantity. We review a district court's factual findings at sentencing for clear error, and the lower court's application of the Guidelines is reviewed de novo. *United States v. Mashek*, 406 F.3d 1012, 1016 (8th Cir. 2005).

We hold that the district court's factual findings were not clearly erroneous. The district court heard and found credible the testimony of officers Stepleton and Pettrone regarding Lopez's drug sales and his subsequent arrest. Credibility is a determination for the trier-of-fact, and its assessment is virtually unassailable on appeal. *United States v. Hernandez*, 187 F.3d 806, 809 (8th Cir.1999). Given the facts outlined above, we find there was ample evidence to support the district court's determination that Lopez assaulted a police officer, that he played a leadership role in his criminal activity, and that the quantity of drugs he sold exceeded 500 grams of methamphetamine. Lopez's final transaction alone exceeded that amount 10 times.

B. *Booker Error*

Lopez contends the district court committed sentencing error in violation of *Booker*, 125 S. Ct. 738, but he did not raise the alleged *Booker* error below. He (understandably) failed to argue for an advisory application of the Guidelines before the district court as he was sentenced prior to *Blakely v. Washington*, 542 U.S. 296 (2004). We will only remand for resentencing due to *Booker* error when the error satisfies the plain error test of *United States v. Olano*, 507 U.S. 725 (1993).[3] *United States v. Pirani*, 406 F.3d 543, 549–50 (8th Cir. 2005) (en banc), *United States v. Beltran-Arce*, 415 F.3d 949, 954–55 (8th Cir. 2005) (holding that because the defendant failed to argue for an advisory application of the Guidelines, the Court reviews for plain error).

Under *Pirani*, mandatory use of the Guidelines constitutes "error" that is "plain." *Pirani*, 406 F.3d at 550. The government concedes in its brief that the district court applied the Guidelines as mandatory and that this constituted an "error" that was "plain." Therefore, the resolution of this case turns upon the third and fourth elements of the *Olano* plain-error test.

---

[3]The Supreme Court has provided the following four-part test that governs plain error review:

> before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affects substantial rights.' If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'

*Johnson v. United States*, 520 U.S. 461, 466–467, 117 S. Ct. 1544, 1549 (1997) (brackets and citations omitted) (interpreting *Olano*, 507 U.S. at 734–35).

In order to establish the third element of the plain-error test, a defendant must show a "reasonable probability that the result would have been different" absent the *Booker* error, *i.e.*, that but for the district court treating the Guidelines as mandatory, the defendant would have received a more favorable sentence. *Pirani*, 406 F.3d at 552–53. Satisfying the *Pirani* standard has proven difficult. We have found the standard satisfied where the district court indicated both a desire to impose a lower sentence and an inability to do so due to the strictures of mandatory Guidelines. *Beltran-Arce*, 415 F.3d at 954–55. However, the mere fact that the defendant was sentenced at the low end of the Guidelines is insufficient. *United States v. Parks*, 415 F.3d 878 (8th Cir. 2005). Similarly, a district court's dislike for the Guidelines is insufficient. *Pirani*, 406 F.3d at 553 n.6. A defendant must demonstrate some evidence—apparent from the face of the record—that the district court was willing but considered itself unable to impose a lesser sentence upon the defendant. Lopez has not shown an inclination by the trial court to give a lower sentence absent mandatory guidelines.

The district court enhanced Lopez's sentence applying a victim-related adjustment for a crime involving an official victim under U.S.S.G. § 3A1.2(b) and a three-level enhancement for being "a manager or supervisor (but not an organizer or leader)" in a "criminal activity that involved five or more participants or was otherwise extensive" under U.S.S.G. § 3B1.1(b). There is no evidence in the record that the district court would not have imposed the victim-related enhancement had the Guidelines been treated as advisory.

Lopez's argument regarding the role enhancement also fails. More than five people participated in Lopez's criminal activity, so the issue on appeal involves the actual role that Lopez played in the crimes. The commentary to § 3B1.1 states that a defendant qualifies for an aggravating role adjustment if he is "the organizer, leader, manager, or supervisor of one or more other participants." § 3B1.1, cmt. n.2. Our circuit has broadly defined the terms "organizer" and "leader." *United States v.*

*Bahena*, 223 F.3d 797, 804 (8th Cir. 2000). Similarly, we have defined the terms "manager" and "supervisor" quite liberally, holding that a defendant can be subject to this enhancement for having managed or supervised only one other participant in the criminal conspiracy. *See, e.g., United States v. Zimmer*, 299 F.3d 710, 724 (8th Cir. 2002). In addition, the manager or supervisor enhancement "may apply even if the management activity was limited to a single transaction." *Id.* (quoting *United States v. Garrison*, 168 F.3d 1089, 1096 (8th Cir. 1999)). However, "merely" distributing or selling drugs is not sufficient for a manager or supervisor enhancement. *Bahena*, 223 F.3d at 806. "Instead, a defendant must direct or enlist the aid of others." *Id*.

Lopez highlights the district court's uneasiness with imposing the role enhancement as indicative of an inclination to sentence more leniently under advisory guidelines. We disagree. During the sentencing hearing, the district court encouraged Lopez to appeal its ruling on role enhancement. The court made its comment in response to defense counsel's argument that Lopez should not qualify for the leadership role enhancement because he only asked Delton Alexander, his roommate, to serve as a lookout on one occasion. Defense counsel thus argued that Lopez was a "mere seller" rather than a manager or supervisor. Viewing the full context of the district court's comments, we do not consider them a statement of an intent to sentence differently under discretionary guidelines but rather a statement of disagreement with the circuit's precedent applying the enhancement in certain factual scenarios.

As a three judge panel, we are similarly bound by circuit precedent. In any event, this sort of disagreement does not create a reasonable probability that but for the mandatory application of the Guidelines the defendant would have received a lower sentence. *Booker* has not altered our precedents on the factual underpinnings of the applicability of a role enhancement. Therefore, we hold that Lopez has failed

to show a reasonable probability his sentence would have been different had the Guidelines been advisory.

## C. *Ineffective Assistance of Counsel*

We also reject Lopez's argument on direct appeal raised in his supplemental pro se brief that he received ineffective assistance of counsel in violation of the Sixth Amendment. "Claims of ineffective assistance of counsel are properly raised in a post-conviction motion under 28 U.S.C. § 2255 and not on direct appeal." *United States v. Pherigo*, 327 F.3d 690, 696 (8th Cir. 2003). Therefore, we do not, absent the rarest of circumstances, address the merits of a defendant-appellant's ineffective assistance of counsel claim on direct review. *Id*. We have characterized this rule as an "oft repeated refrain." *Id*. The rationale is that claims of ineffective assistance are "more appropriately raised in a collateral proceeding under 28 U.S.C. § 2255, where a better factual record can be developed." *Id*. Lopez's case does not include any rare factual or legal circumstances that would warrant our attention on direct appeal.

## D. *Ex Post Facto Clause*

Finally, Lopez also asserts for the first time on appeal in his pro se supplemental brief that the use of the November 2003 edition of the Guidelines violated the Ex Post Facto Clause. U.S. CONST. art. I, § 9, cl. 3. Our reading of the Guidelines indicates that it would not have mattered which edition was used: either would have resulted in an offense level of 24. Both sets of possible Sentencing Guidelines—those in effect in November 2003 as well as those in effect in November 2002—require an offense level enhancement of 24. U.S.S.G. § 2L1.2(b)(1)(A) (2003) (stating that unlawful entry or remaining in the United States constitutes a base offense level of 8, plus a 16-level enhancement for a crime of violence); U.S.S.G. § 2L1.2(b)(1)(A) (2002) (same). Therefore, there was no error by the use of the November 2003 Guidelines. *United States v. Zimmer*, 299 F.3d 710, 723 (8th Cir. 2002).

Finding no reversible error, we affirm the judgment of the district court.

_____