# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2481

_____

United States of America

*Plaintiff - Appellee*

v.

Marvin Donaldo Chehuen Lopez

*Defendant - Appellant*

_____

No. 12-2497

_____

United States of America

*Plaintiff - Appellee*

v.

Rony Eleazar Guerra-Guala,
also known as Rony Eliazar Guerra-Guala,
also known as Alex

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: December 14, 2012
Filed: February 7, 2013
[Unpublished]
_____

Before WOLLMAN, BYE, and BENTON, Circuit Judges.
_____

PER CURIAM.

Marvin Donaldo Chehuen Lopez and Rony Eleazar Guerra-Guala (collectively, Defendants) pleaded guilty to one count of conspiring to distribute and to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C), and 846. The district court[1] sentenced Chehuen Lopez and Guerra-Guala to 120 and 192 months' imprisonment, respectively. Defendants appeal their sentences, arguing that there was insufficient evidence to support the district court's application of aggravating-role enhancements under United States Sentencing Guidelines (Guidelines) § 3B1.1. Guerra-Guala also argues that the district court erred in calculating the drug quantity attributable to him. We affirm.

## I. Background

In 2009, law enforcement officers received information that Defendants were distributing methamphetamine in St. Paul, Minnesota. The officers' investigation confirmed that Defendants and several other individuals were distributing large amounts of methamphetamine and some cocaine.

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

Defendants pleaded guilty without a plea agreement after a grand jury indicted them and eleven other coconspirators. At his change of plea hearing, Chehuen Lopez admitted that from May 2009 to approximately September 2010 he acted as a runner for the conspiracy by delivering cocaine and methamphetamine to customers in Minnesota. He stated that he delivered around three pounds of methamphetamine per week during the conspiracy, but that, towards the end, this amount dropped to about a pound per week. When changing his plea, Guerra-Guala stated that his role in the conspiracy was to take orders from customers over the phone and send a runner to deliver the drugs and collect the customer's money. Guerra-Guala said that he engaged in this activity nearly every day.

The United States Probation Office's presentence reports (PSRs) recommended that Chehuen Lopez receive a three-level enhancement for being a manager or supervisor of the conspiracy and that Guerra-Guala receive a four-level enhancement for being an organizer or leader of the conspiracy. The PSRs attributed at least 15 kilograms of methamphetamine to Defendants. Defendants objected to the aggravating role enhancements, and Guerra-Guala objected to the PSR's drug quantity calculation.

The district court held a joint evidentiary hearing on the objections, during which it heard testimony from Deputy Chris Freichels, the primary case agent, and Jason Leblonde, a coconspirator who had purchased methamphetamine from Defendants.

Freichels testified in detail regarding the roles that Defendants played in the conspiracy. Prior to 2007, Guerra-Guala's cousin, Yuris, ran a drug distribution operation in Minnesota. Guerra-Guala worked in the operation as a contact person, taking orders from customers over the phone and dispatching runners to deliver the drugs and collect the customer's money. According to Freichels, Guerra-Guala assumed control over all aspects of the operation when Yuris left for Guatemala in

2007. Wire taps of Guerra-Guala's phones revealed that he would order drugs from his source and have them shipped to Minnesota. When a shipment arrived, Guerra-Guala would direct a coconspirator, who held the drug proceeds for Guerra-Guala, to have the purchase money available and to deliver the money to a certain place. Freichels also overheard Guerra-Guala setting the price for the drugs, telling his coconspirators where to store the drugs, and ordering them to secure cutting agents to dilute the drugs before repackaging them.

Towards the end of the conspiracy, Freichels overheard Guerra-Guala saying that he was going to return to his native Guatemala and that he planned to place Chehuen Lopez and another individual in charge of the conspiracy in his absence. Chehuen Lopez was to handle the drug proceeds and assume Guerra-Guala's position as the conspiracy's contact person. Chehuen Lopez became the conspiracy's contact person in September 2010, when he began taking orders from customers and dispatching a runner to deliver the drugs. Leblonde testified that in the summer of 2010, he encountered Chehuen Lopez and another member of the conspiracy making a delivery at someone's house. Leblonde believed that Chehuen Lopez was training the coconspirator to be a runner.

Both Freichels and Leblonde testified about the amount of methamphetamine involved in the conspiracy. Freichels recounted statements by several named coconspirators concerning the amount of methamphetamine they purchased from Defendants. Additionally, he estimated certain amounts of methamphetamine that the coconspirators purchased from Defendants. When totaled, these amounts constituted well over 40 kilograms. Leblonde testified that during the summer of 2008 he purchased between a pound and a pound and a half of methamphetamine five times a week. Thereafter, Leblonde's purchase of methamphetamine dropped to approximately an ounce or two per week.

At sentencing, the district court overruled Chehuen Lopez's and Guerra-Guala's objections to the PSRs and imposed the earlier-described sentences.

## II.  Discussion

We review the district court's construction and application of the Guidelines *de novo*.  United States v. Augustine, 663 F.3d 367, 374 (8th Cir. 2011).  We review for clear error the district court's factual findings regarding the aggravating role enhancements and the drug quantity determination, applying the preponderance of the evidence standard.  Unites States v. Gamboa, 701 F.3d 265, 266 (8th Cir. 2012) (role in offense); United States v. Walker, 688 F.3d 416, 420 (8th Cir. 2012) (drug quantity determination).

### A.  Aggravating Role Enhancements

As relevant to this case, Guidelines § 3B1.1 authorizes two enhancements for a defendant's role in criminal activity involving at least five participants.  See U.S.S.G. § 3B1.1(a), (b).  A defendant who is an "organizer or leader" of the criminal activity is subject to a four-level enhancement.  U.S.S.G. § 3B1.1(a).  A "manager or supervisor (but not an organizer or leader)" of the criminal activity is subject to a three-level enhancement.  U.S.S.G. § 3B1.1(b).

Defendants do not argue that the conspiracy involved fewer than five participants.  Instead, they dispute the district court's characterization of their roles in the conspiracy.  A number of factors are taken into account when determining a defendant's role in the offense:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of

participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4.

1.     Guerra-Guala

Guerra-Guala argues that the evidence was insufficient to support the district court's finding that he was an "organizer" or "leader" of the conspiracy under Guidelines § 3B1.1(a).  He contends that he was simply a contact person for the conspiracy and that Yuris was actually in charge.  The evidence at the sentencing hearing showed that Guerra-Guala purchased drugs for the conspiracy, determined the price at which these drugs were sold, and directed his coconspirators concerning the management of the drug proceeds, the storage and processing of the drugs, and the delivery of the drugs to customers.  Freichels testified that "[i]t was always Mr. Guala that was directing everyone.  No one told him what to do."  Tr. 30.  Indeed, when Guerra-Guala decided to return to Guatemala, he determined who his successors would be and what roles they would play in the conspiracy.  Construing the terms "organizer" and "leader" broadly, United States v. Molina-Perez, 595 F.3d 854, 862 (8th Cir. 2010), we conclude that the district court did not clearly err by imposing an enhancement under Guidelines § 3B1.1(a).

2.     Chehuen Lopez

Chehuen Lopez argues that the district court erred in applying the three-level "manager" or "supervisor" enhancement because his role in the conspiracy was that of a mere "dispatcher."  "[W]e have defined the terms 'manager' and 'supervisor' quite liberally, holding that a defendant can be subject to this enhancement for having managed or supervised only one other participant in the criminal conspiracy."  United States v. Lopez, 431 F.3d 313, 317-18 (8th Cir. 2005).  Additionally, the

enhancement "'may apply even if the management activity was limited to a single transaction.'" Id. at 318 (quoting United States v. Zimmer, 299 F.3d 710, 724 (8th Cir. 2002)).

It is undisputed that Chehuen Lopez began acting as the contact person for the conspiracy in September 2010. As the contact person, Chehuen Lopez would take orders from customers and negotiate the place of delivery. He would then direct the conspiracy's runner, whom, according to Leblonde, Chehuen Lopez had trained, to deliver the drugs and collect the money from the customer. Given this evidence, the district court's finding that Chehuen Lopez was a manager or supervisor was not clearly erroneous. See United States v. Cole, 657 F.3d 685, 687-88 (8th Cir. 2011) (per curiam) (upholding enhancement where defendant "transported/and or directed the transportation" of drugs and directed a coconspirator to drive him from city to city to deliver drugs); Lopez, 431 F.3d at 316-18 (upholding enhancement where defendant asked his roommate to "serve as a lookout on one occasion").

## B. Drug Quantity

Guerra-Guala argues that the evidence was insufficient to support the district court's drug quantity determination. "This court will overturn a finding of drug quantity only if the entire record definitively and firmly convinces us that a mistake has been made." United States v. Young, 689 F.3d 941, 945 (8th Cir. 2012) (citation omitted). "When calculating drug quantity in the context of a narcotics trafficking conspiracy, the sentencing court may consider all transactions known or reasonably foreseeable to the defendant that were made in furtherance of the conspiracy." United States v. Plancarte-Vazquez, 450 F.3d 848, 852 (8th Cir. 2006).

The district court's drug quantity determination was not clearly erroneous. Freichels described a conspiracy that sold more than 40 kilograms of methamphetamine. Leblonde corroborated this testimony by stating that he had

purchased between a pound and a pound and a half of methamphetamine five times a week during the summer of 2008.[2]  Further, Chehuen Lopez stated that he delivered between one to three pounds of methamphetamine per week during his time as a runner for the conspiracy.

Guerra-Guala objects to the district court's reliance on this evidence, arguing that the statements of Leblonde and his coconspirators were not reliable.  "But '[a]rguments about the reliability of a witness are in reality an attack on the credibility of that testimony, and witness credibility is an issue for the sentencing judge that is virtually unreviewable on appeal.'"  Walker, 688 F.3d at 422 (quoting United States v. Sarabia-Martinez, 276 F.3d 447, 450 (8th Cir. 2002)).  We see no basis to conclude that the district court clearly erred by finding Freichels and Leblonde credible.  The evidence thus was sufficient to support the district court's finding that Guerra-Guala was responsible for at least 15 kilograms of methamphetamine.

III.

The sentences are affirmed.

_____

[2]Guerra-Guala's brief points out in a footnote that his sale of methamphetamine to Leblonde during the summer of 2008 occurred prior to the initial date of the conspiracy alleged in the indictment. When determining drug quantity, however, the district court may consider all drugs "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).  The evidence showed that the conspiracy began well before the April 2009 date alleged in the indictment, and both Leblonde and Freichels testified that Guerra-Guala was integrally involved in the conspiracy's sale of methamphetamine to Leblonde in the summer of 2008.  Thus, the district court appropriately considered Guerra-Guala's sale of methamphetamine to Leblonde during this time period when making its drug quantity determination.