# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4054
_____

United States of America

*Plaintiff - Appellee*

v.

Jeffrey Allen Gardner

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 20, 2017
Filed: November 20, 2017
[Unpublished]

_____

Before WOLLMAN and SHEPHERD, Circuit Judges, and GOLDBERG,[1] Judge.

_____

PER CURIAM.

A jury convicted Defendant-Appellant Jeffrey Gardner of mail fraud, conspiracy to commit mail fraud, bank fraud, and false statements to a financial institution. On appeal, Gardner challenges his convictions for bank fraud and false

_____

[1]The Honorable Richard W. Goldberg, Senior Judge, United States Court of International Trade, sitting by designation.

statements. Gardner also challenges two of the district court's[2] sentencing determinations. For the reasons discussed below, we affirm Gardner's convictions and affirm the district court's sentencing determinations.

## BACKGROUND

Gardner owned and operated several businesses in Little Canada, Minnesota. Gardner successfully solicited a number of investors for one of his businesses, Hennessey Financial ("Hennessey"), a real estate financing entity. Most of Hennessey's lending was in the form of mezzanine loans to Gardner's other real estate development companies. The sales pitches to prospective investors were made by Gardner and, in some cases, also by Hennessey's chief financial officer Jon Essen.

Gardner's co-defendant, Stuart Voigt ("Voigt"), made a series of personal loans to Gardner and to Gardner's entities. At the time Voigt made these loans to Gardner, Voigt was the Chairman of First Commercial Bank in Bloomington, Minnesota ("First Commercial"). In February 2005, after Voigt had begun personally lending money to Gardner, Gardner applied for a $1,000,000 line of credit from First Commercial on behalf of Hennessey. The application reflected that Gardner would personally guarantee the loan. In support of the application, Gardner provided a signed "Personal Financial Statement," which purported to disclose his assets and liabilities. With his signature, Gardner certified that the personal financial statement had been carefully reviewed and was true and accurate in all respects. However, Gardner disclosed none of the personal loans from Voigt, totaling at least $2,900,000 at the time. Nor did Gardner disclose more than $91,000,000 in personal guarantees to other creditors. First Commercial's loan committee, of which Voigt was a member, approved the loan.

---

[2]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

-2-

Approximately one year later, Gardner submitted financial statements to First Commercial in support of an application for an increase in the line of credit to $2,000,000. Like the original loan application, these statements omitted any reference to Gardner's loans from Voigt, now totaling at least $4,500,000. And Gardner again failed to disclose significant outstanding personal guarantees, now totaling more than $142,000,000. First Commercial approved Gardner's new application.

Beginning in 2006, as the real estate market slowed nationwide, Gardner's companies began to lose much of their value. As a result, those companies could not repay the loans made by Hennessey. However, Gardner did not timely disclose the severe decline of Hennessey and Gardner's other companies to Hennessey's existing or prospective investors.

In 2013, Gardner was indicted on multiple counts of fraud. The Amended Second Superseding Indictment charged Gardner with mail fraud, conspiracy to commit mail fraud, bank fraud, and false statements to a financial institution. On February 5, 2016, a jury found Gardner guilty on 11 of the 12 counts charged. Gardner filed a motion for judgment of acquittal concerning each of these counts. The district court granted Gardner's motion as to two counts and denied the motion as to the remaining nine counts. On appeal, Gardner challenges the district court's denial of his motion for acquittal with respect to four of the nine remaining counts.

At sentencing, Gardner made a number of objections regarding proposed sentencing enhancements, some of which were sustained. The district court sentenced Gardner to 90 months imprisonment for the mail fraud and conspiracy convictions and 37 months for the bank fraud and false statements convictions, to be served concurrently. On appeal, Gardner renews his objections to two of the sentencing enhancements.

# DISCUSSION

## A.

Gardner insists that there was insufficient evidence to support his convictions for bank fraud under 18 U.S.C. § 1344 and for making false statements to a financial institution under 18 U.S.C. § 1014. We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government and accepting all reasonable inferences that support the verdict. *United States v. Moran*, 612 F.3d 684, 690 (8th Cir. 2010) (citation omitted). Our standard of review "is very strict, and the verdict of the jury should not be overturned lightly." *United States v. Baker*, 98 F.3d 330, 338 (8th Cir. 1996).

With respect to bank fraud, the Government was required to show that Gardner knowingly participated in a scheme or artifice with the intent to defraud First Commercial. *See* 18 U.S.C. § 1344. A scheme can be any course of action intended to deceive another out of money by employing material falsehoods or concealing material facts. *See* 8th Cir. Model Crim. Jury Instrs. 6.18.1344.

With respect to false statements, the Government was required to show that Gardner knowingly made a false statement for the purpose of influencing an action of First Commercial. *See* 18 U.S.C. § 1014.

Gardner contends that there was insufficient evidence that he knowingly, and with the requisite intent, committed these crimes. But neither the law nor the record supports Gardner's position. Contrary to Gardner's insistence, to affirm the convictions, we need not find that the evidence wholly foreclosed the possibility that Gardner's omissions were innocent mistakes. *See United States v. Nabors*, 762 F.2d 642, 653 (8th Cir. 1985) (citation omitted) ("The evidence need not exclude every reasonable hypothesis except guilt . . . ."). Rather, "[t]he jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-

-4-

minded jury to conclude guilt beyond a reasonable doubt." *United States v. Erdman*, 953 F.2d 387, 389 (8th Cir. 1992) (citing *Rodriguez*, 812 F.2d at 416). Such an interpretation exists on this record.

Gardner's signed financial statements purported to disclose his liabilities, but did not include any of the personal loans made to Gardner by Voigt, the bank's chairman, and did not include tens of millions of dollars in contingent liabilities. It is reasonable to infer that this was not an oversight. It is reasonable to infer that Gardner's omissions were calculated to improve his chances of securing and, later, increasing the loan.

In sum, there are sufficient facts in the record to allow a reasonable jury to conclude, beyond any reasonable doubt, that Gardner acted with knowledge, with an intent to defraud, and with the purpose of influencing the decisions of First Commercial. Thus, the district court did not err in denying Gardner's motion for a judgment of acquittal for the bank fraud and false statements convictions.

**B.**

Gardner also challenges the 18-level "loss amount" and the two-level "role in the offense" sentencing enhancements applied by the district court. "We review a district court's factual findings at sentencing for clear error, and the lower court's application of the Guidelines is reviewed de novo." *United States v. Lopez*, 431 F.3d 313, 316 (8th Cir. 2005) (citation omitted).

The Sentencing Guidelines provide for a sentencing enhancement to reflect the amount of loss caused by the defendant's actions. U.S.S.G. § 2B1.1(b)(1). The district court determined that Gardner's fraud caused loss exceeding $3,500,000, warranting an 18-level enhancement. The district court's loss calculation was based on the finding that Gardner was responsible for fraud as of July 1, 2006. At sentencing, Gardner argued for a lesser loss amount, based on his position that any fraudulent conduct began no earlier than March 2, 2007.

The record supports the district court's finding that Gardner committed fraud on Hennessey's investors at least as early as July 1, 2006. Hennessey's ability to pay back investors was tied to the ability of Gardner's other businesses to service their Hennessey loans. Those other companies stopped making payments to Hennessey around the spring of 2006. Yet, Gardner did not apprise new or existing investors of this fact. Gardner correctly notes that all investors were made aware of the general risks inherent in mezzanine loans, which are typically unsecured and subordinate to other loans. Nevertheless, the district court did not clearly err in finding that, in light of the significant change in circumstances, investor communications were materially misleading as of July 1, 2006.

The Sentencing Guidelines also provide for an enhancement if the "defendant was a manager or supervisor in any criminal activity." U.S.S.G. § 3B1.1. This "role in the offense" adjustment applies even if the defendant managed or supervised only one other participant. *See Lopez*, 431 F.3d at 318.

The record amply supports the district court's conclusion that Gardner directed at least one other participant, Hennessey CFO Jon Essen, in furtherance of the fraudulent scheme. Gardner was Essen's employer and supervisor. Essen prepared misleading letters to investors and Gardner approved those letters. Accordingly, the district court did not clearly error in applying the two-level enhancement for Gardner's supervisory role in the offense.

## CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Gardner's motion for judgment of acquittal with respect to his bank fraud and false statement convictions and affirm the district court's application of the 18-level loss amount and two-level role in the offense sentencing enhancements.

_____